

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

ENTERED
02/21/2017

| | | |
|---|---|---|
| IN RE: | § | |
| **VICKY GRIBBLE WRIGHT; aka VICKY** | § | **CASE NO: 13-10472** |
| **L WRIGHT; aka VICKY  WRIGHT; fdba** | § | |
| **VICKY WRIGHT/BORDERS** | § | |
| **CONTRACTORS INC.** | § | |
| **Debtor** | § | |
| | § | **CHAPTER  13** |
| | § | |
| **VICKY GRIBBLE WRIGHT** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 16-1004** |
| | § | |
| **WILLIAM A. CSABI**, *et al* | § | |
| **Defendants** | § | **JUDGE EDUARDO V. RODRIGUEZ** |

**MEMORANDUM OPINION**
**GRANTING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**
**AND**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER**
**AND**
**DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE**
**DEFENDANTS' JOINT AMENDED ANSWER**
**[*Resolving ECF Nos. 19, 24, 35*]**

### I.   INTRODUCTION

Pending before the Court are three motions, self-styled as "Defendants' Joint Motion for

Protective Order," that was filed on January 24, 2017, and "Defendants' Motion for leave to File

Defendants' Joint Amended Answer," that was filed on January 27, 2017.  [ECF No. 19] (the

"***Defendants' Motion for Protective Order***"); [ECF No. 24] (the "***Motion for Leave***").  The

Plaintiff has also filed her own Motion for Protective Order.  [ECF No. 35] (the "***Plaintiff's***

***Motion for Protective Order***").  In the Defendants' Motion for Protective Order, the Defendants,

which are Mr. James P. Grissom ("***Grissom***"), Mr. William A. Csabi ("***Csabi***"), and Mr.

Francisco J. Rodriguez ("**Rodriguez**"), (collectively, the "**Defendants**"), request that this Court issue a protective order in regards to responsive disclosures sought by Plaintiff's Request for Production. *See generally* [ECF No. 19]. Similarly, Plaintiff seeks to prevent disclosure of her tax returns that the Defendants seek through their own Request for Production. [ECF No. 35 at 1–2]. In addition to the dueling motions for protective orders, Defendants seek the Court's leave to file an amended joint answer. [ECF No. 24]. On February 7, 2017, the Court held a hearing on the motions at bar. In consideration of the arguments presented in the hearing on these matters, all other evidence in the record, and relevant case law, and for the reasons stated in this Memorandum Opinion, this Court determines that (1) Plaintiff's Motion for Protective Order should be granted; (2) Defendants' Motion for Protective Order should be granted in part and denied in part; and (3) Defendants' Motion for Leave should be denied.

## II.   FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

For the purposes of this Memorandum Opinion and, to the extent not inconsistent herewith, this Court adopts and incorporates by reference each of the Finding of Facts in this Court's Memorandum Opinion and prior orders in this dispute. [Case No. 13-10472, ECF No. 180 at 1–13] (the "**Memorandum Opinion**"); [ECF Nos. 91, 98, 106, 114, 120, 126, 138, 141, 154, 158, 159, 162, 175, 177, 181, 184, 185, 191, 195, 201, 204, 214, 224, 239] (collectively, the "**Orders**").

On September 6, 2016, Plaintiff filed the instant adversary after attempting to resolve the

dispute through her bankruptcy case.  [Case No. 16-1004, ECF No. 1] (the "**Complaint**").  In her Complaint, Plaintiff alleges that when Grissom sought to be employed in Plaintiff's bankruptcy case he failed to disclose  to the Court his relationship with Csabi and Rodriguez, who also failed to disclose,  *Id.* at 1–5.  The dispute in the Complaint centers on the proceeds from Plaintiff's settlement of a state court lawsuit that arose during her bankruptcy case, which amounted to $650,000.00 before $100,000.00 was ordered paid to her chapter 7 trustee for the benefit of the chapter 7 bankruptcy estate and $326,914.90 to the IRS as a payment against Plaintiff's ex-spouse's tax liabilities.  *See* [Case No. 13-10472, ECF No. 92].  The net proceeds after those deductions was $223,085.10 (the "**Proceeds**").  *Id.*  When Grissom distributed a portion of the Proceeds to Csabi and Rodriguez, Plaintiff alleges that doing so was in violation of state and federal law.  *Id.* at [Case No. 16-1004, ECF No. 1 at 6–13; *see also* [Case No. 13-10472, ECF No. 149-7]; *see generally* [ECF No. 180]; [ECF Nos. 91, 98, 106, 114, 120, 126, 138, 141, 154, 158, 159, 162, 175, 177, 181, 184, 185, 191, 195, 201, 204, 214, 224, 239].  Summonses were executed on the Defendants on September 16, 2016.  [Case No. 16-1004, ECF Nos. 8–10].

On October 14, 2016, and October 17, 2016, Csabi, Grissom, and Rodriguez, respectively, filed their answers to the Plaintiff's Complaint.  [ECF Nos. 11–12].  On December 7, 2016, the Court held its scheduling conference and issued a scheduling order setting forth certain deadlines.  [ECF No. 16].  On January 24, 2017, Defendants filed their Motion for Protective Order.  [ECF No. 19].  Specifically, Defendants request that the Court (1) restrict discovery of documentation of client transactions, including those unrelated to the Proceeds at issue; (2) prohibit discovery of Csabi and Rodriguez's respective bank records; (3) prohibit the discovery of Csabi and Rodriguez's income tax filings; and (4) prohibit discovery of Csabi and Rodriguez's transfers of property.  *Id.* at 7–8.  That same day Defendants filed their first

amended answer, which was stricken by the Court for Defendants' failure to seek leave first.  *See* [ECF No. 20]; [ECF No. 21] (striking [ECF No. 20] for failure to seek leave of the Court prior to filing an amended answer more than 21 days after the prior answer had been filed).  On January 27, 2017, the parties requested an extension of deadlines beyond what had been provided in the Court's scheduling order at a hearing in Plaintiff's bankruptcy case and submitted an agreed order that was signed by the Court.  *See* [ECF Nos. 22, 23].

On January 27, 2017, Defendants filed their Motion for Leave requesting the Court's permission to file an amended answer to Plaintiff's Complaint.  [ECF No. 24]; *see also* [ECF No. 24-1] (the "***Proposed Amended Answer***").  In the Motion for Leave, Defendants state the basis for their request is "in interest of justice."  [ECF No. 24].  The following day, Defendants filed their Joint Notice of Non[-]consent to Entry of Final Judgment, as required by the Court's Scheduling Order.  [ECF No. 25, 16].  Subsequently, Plaintiff filed her Notice of Consent.  [ECF No. 28, 29].

On February 1, 2017, Plaintiff filed her response to Defendants' Motion for Leave.  [ECF No. 33]; *see also* [ECF No. 24].  In her response, Plaintiff argues that the Proposed Amended Answer raises issues that are futile and dilatory in light of the significant litigation that has already transpired in her bankruptcy case.  [ECF No. 33 at 3–4].  On February 2, 2017, Plaintiff filed her Motion for Protective Order in response to Defendants' Request for Production that sought disclosure of tax returns for 2006 through 2011.  [ECF No. 35].  Defendants have yet to file a response to Plaintiff's Motion for Protective Order.

On February 7, 2017, the Court held an evidentiary hearing at which Plaintiff, Csabi, Grissom, and Counsel for Rodriguez appeared, but Rodriguez did not personally appear (the "***Hearing***").  At the Hearing, the parties offered exhibits, presented arguments, and testimony

was heard from Plaintiff.

1.    Exhibits offered at the Hearing:

    a.   Plaintiff offered four exhibits, each of which was admitted into evidence.

    b.   Defendants offered a single exhibit—a letter written by Plaintiff and her ex-spouse to an alleged enrolled agent—that was admitted into evidence.

2.    Testimony and Party Statements:

    a.   Plaintiff testified extensively regarding Defendants' sole exhibit, its purpose, and the circumstances surrounding why the letter had been sent.

    b.   Csabi and Rodriguez's Counsel stated to the Court that each had received a transfer from Grissom in the amount of $73,333.00.

        i.   Rodriguez's Counsel further stated to the Court that the funds had been mostly spent in the month that followed its receipt.

        ii.   Csabi further stated that the funds had been partially spent, but he was still in possession of the remainder.

    c.   Grissom stated to the Court that Plaintiff's Counsel had conferred with him, in some manner, prior to filing Plaintiff's Motion for Protective Order.

At the conclusion of the Hearing, the Court issued an amended scheduling order that, for reasons stated below, requires that (1) Csabi deposit $73,333.00 into the Court's registry by March 10, 2017; (2) Rodriguez turn over all supporting documentation of his bank accounts relating to the $73,333.00 his counsel represented that he received from Grissom; and (3) Grissom turn over a copy of the Proceeds check and the related deposit slip.  [ECF No. 43 at 2].

### III.    LEGAL STANDARD

The Court recently addressed the issue of a protective order and will analyze the

Defendants' and Plaintiff's, respective, Motions for Protective Order on the basis of the legal standard announced therein. *See generally In re Trevino*, 2017 WL 123756, at *1 (Bankr. S.D. Tex. Jan. 12, 2017). The Court's *Trevino* opinion also touched on the provisions of Rule 15, but not the same portion that provides for amending a pleading. *Id.* at *9–*10, *23–*24.

A.    **REQUESTING A PROTECTIVE ORDER**

The Federal Rules of Civil Procedure provide guidelines for the free exchange of information between parties through the process of discovery and disclosures covered under Rule 26. *See generally* Fed. R. Civ. P. 26; *see also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) (discussing the provision for exchange of information and how such information may be utilized by parties). In addition to providing the guidelines for discovery and disclosures, Rule 26 provisions parties with the ability to seek refuge from certain discovery upon demonstrating the necessity for such a safeguard. *See generally* Fed. R. Civ. P. 26(c); 8A Fed. Prac. & Proc. Civ. § 2036 (3d ed.). To be specific, the moving party must demonstrate that disclosing the discovery sought by the opposing party causes "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden of what must be demonstrated varies depending on the basis upon which the moving party utilizes in seeking the protective order. *See generally* Bankr. Proc. Manual § 7026:16; *see also Fed. Open Market Comm. of Fed. Reserve Sys. V. Merrill*, 443 U.S. 340, 363 (1979); *Moore v. Ford Motor Co.*, 755 F.3d 802, 808–09 (5th Cir. 2014) (Elrod, J., dissenting); 8A Fed. Prac. & Proc. Civ. § 2043 (3d ed.) (stating "It is well settled that there is no absolute privilege for trade secrets and similar confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure."). In addition to having an adequate basis to support the motion, Rule 26 requires parties to certify that they have

conferred—or attempted in good faith to confer—with the opposing party to resolve the issue or dispute before involving the court, which is similar to other provisions of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 26(c)(1).

Upon a moving party meeting the burden of both prerequisites, a court has "broad discretion in fashioning protective orders 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'"  Bankr. Proc. Manual § 7026:16 (2016 ed.) (citing to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).  Rule 26 enumerates certain remedies, which may be used singularly or in tandem with one another:

> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> (E) designating the persons who may be present while the discovery is conducted;
> (F) requiring that a deposition be sealed and opened only on court order;
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1)(A)–(H).  The protective measures are not required to necessarily terminate with the end of the litigation.  Bankr. Proc. Manual § 7026:16 (2016 ed.) (citing to *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417 (9th Cir. 2011)).

**B.    MOTION FOR LEAVE**

The Federal Rules of Civil Procedure provide different avenues for a party to amend or supplement a pleading that was previously filed. *See generally* Fed. R. Civ. P. 15. *C.f. In re Trevino*, 2017 WL 123756, at *9–*10, *23–*24.  However, the provisions are dependent upon the timing of when the amended pleading would be filed.  *See generally* Fed. R. Civ. P. 15(a),

(b).  To wit, Rule 15 provides that a party may amend a pleading once, as a right, within 21 days

of serving the pleading or, in the case of a pleading that requires a response to be filed, 21 days

after a responsive pleading was filed.  Fed. R. Civ. P. 15(a); *see also* Fed. R. Bankr. P. 7015

(applying Fed. R. Civ. P. 15 to adversary proceedings without limitation).  Rule 15 also provides

for the amendment of a pleading during or after trial, which is inapplicable in this case.  Fed. R.

Civ. P. 15(a)(1)(B) (discussing amendments after "service of a motion under Rule 12(b), (e), or

(f)…").  If a party does not meet the requirements under Fed. R. Civ. P. 15(a)(1), then parties

must seek leave of the court or have the opposing party's written consent to file an amended

pleading.  Fed. R. Civ. P. 15(a)(2).  When considering a party's request for leave to file an

amended pleading, Rule 15 states that "[t]he court should freely give leave *when* justice so

requires."  *Id.*; *see, e.g.*, *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).  A

party seeking leave to file an amended pleading must do so with a requisite level of specificity,

failing which a court may deny leave.  *See, e.g.*, *Id.* (citing a series of cases where the movant

failed to provide adequate specificity to satisfactorily request leave to amend).

In the event that a party provides sufficient specificity, a court must determine whether or

not justice does indeed require permitting the amended pleading to be filed.  *Id.*; *see also* Fed. R.

Civ. P. 15(a)(2).  Among the considerations to determine whether "justice so requires" is "a

movant's undue delay or dilatory motive."  Fed. R. Civ. P. 15(a)(2); *Krupski v. Costa Crociere

S.p.A.*, 560 U.S. 538, 553 (2010) (citing to *Foman v. Davis*, 371 U.S. 178 (1962)); *see also* 6 C.

Wright, *et al.*, Fed. Prac. & Proc. Civ. § 1487 (3d ed.) (stating that "[t]he liberal amendment

policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases").  Aside

from undue delay or dilatory motive, a court can deny leave to amend a pleading when the

moving party has been shown to have repeatedly failed to cure deficiencies by previous

amendments, undue prejudice to the opposing party by permitting the amendment, or the amendment to the pleading would be futile. *C3PO Int'l, Ltd. v. DynCorp Int'l, L.L.C.*, 2016 WL 5794747, at *1, *2 (5th Cir. Oct. 4, 2016) (citing to *Foman v. Davis*, 371 U.S. 178, 182 (1962), and *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).

## IV.   CONCLUSIONS OF LAW

### A.   JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provisions that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See also* 28 U.S.C. § 157(a); *see, e.g.,* In re: Order of Reference to Bankruptcy Judges, General Order 2012-6 (S.D. Tex. May 24, 2012). Section 157 provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core, which includes "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2); *see also Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999). A bankruptcy court has jurisdiction over a "related to" matter when the "outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987); *see also Arnold v. Garlock*, 278 F.3d 426 (5th Cir. 2001) (holding that "[c]ertainty or even likelihood of such an effect is not a requirement. . ."). This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b)–(c). *See Wood*, 825 F.2d at 93; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 6 (1995).

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 or arising in or related to cases under title 11 is governed by 28 U.S.C. § 1409, which designates that venue may hold wherever "a proceeding arising under title 11 or arising in

or related to a case under title 11 may be commenced in the district court in which such case is pending." Plaintiff's bankruptcy case was and still is pending before this Court, pursuant to 28 U.S.C. § 1408, at the time this Adversary Proceeding commenced. Therefore, venue is proper.

**B.    CONSTITUTIONAL AUTHORITY TO ENTER A FINAL ORDER**

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). In *Stern*, the Supreme Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 486. Hence, the Court held Article III imposes some restrictions against a bankruptcy judge's power to rule with finality, but a bankruptcy court is permitted to issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* § 157. However, Article III will be satisfied where parties knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters).

The matter at bar arises from Plaintiff's Chapter 13 case, which is a core proceeding under § 157(b)(2). Although Defendants have neither admitted nor denied that the Court has jurisdiction over the claims arising under the Bankruptcy Code, they nevertheless seek to resolve a discovery dispute and request the Court's leave to amend their answers. *Compare* [ECF No. 11] *and* [ECF No. 12] *with* [ECF No. 19] *and* [ECF No. 24]. Plaintiff's claims, as alleged in her Complaint, present a mixture of core and potentially non-core claims. *See generally* [ECF No. 1]. This Court's authority to issue a protective order governing the production of documents differs from this Court's authority to issue final judgments on the merits of claims. *C.f. In re*

*Texas Extrusion Corp.*, 844 F.2d 1142, 1154–55 (5th Cir. 1988).  A similar distinction is also applicable to a motion for leave to file an amended complaint.  *Id.*  This is because the integrity of the discovery process helps to fully apprise a bankruptcy court as to the threshold issue of whether a merited and jurisdictionally proper claim stands before it, and it therefore must have some power to enforce this process irrespective of whether the underlying claim is core or non-core. *See In re Allison*, 2006 WL 2620480, at *7 (Bankr. S.D. Tex. Sep. 12, 2006) ("At a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction"); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "discovery itself is designed to help define and clarify the issues").  Rule 26, which applies in adversary proceedings in bankruptcy, bestows on parties a duty to disclose information which the parties intend to use to support their claims or defenses, including initial disclosures and pretrial disclosures.  Fed. R. Civ. P. 26; *see also* Fed. R. Bankr. P. 7026.   Without concluding whether the Court has the constitutional authority to grant or deny final judgment on the merits of the matters pertaining to the underlying claims absent consent of the parties, this Court determines it may grant or deny the pending Motion for Leave, Plaintiff's Motion for Protective Order, and Defendants' Motion for Protective Order as doing so is not a final order that is potentially violative of *Stern* because there is not a "final determination of the rights of the parties to secure the relief they seek." *Williams v. Midwest Emp'rs Cas. Co*., 243 F.3d 208, 209 (5th Cir. 2001) (citing to *Cunningham v. Hamilton Cty.*, 527 U.S. 198, 204, (1999)); *see also In re Lopez*, 2016 WL 4546884, at *2–4 (holding that the bankruptcy court's discovery-related order was interlocutory and not subject to review pursuant to the requirements of 28 U.S.C. § 158(a)(3)).

C.   **REQUESTING A PROTECTIVE ORDER**

   i)   *Plaintiff's Motion for Protective Order*

Plaintiff's Motion for Protective Order arises from a Request for Production served by the Defendants in relation to a deposition to follow on February 9, 2017. [ECF No. 35]. The Defendants' Request for Production, according to Plaintiff, seeks the production of the Plaintiff's tax returns for 2006 through 2011. *Id.* at ¶ 2. Plaintiff alleges that such request is not relevant to any present counterclaim pressed by the Defendants, but is related to one that is pressed in Defendants' amended answer subject to the pending Motion for Leave. *Id.* at ¶ 3; *see infra*.

A request for a protective order must meet two requirements in order for the court to find that it is in good order: (1) the certification of conferment or attempted conferment; and (2) demonstrate that the movant needs to be protected from "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1); *c.f. Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Only once this has been demonstrated can the Court consider fashioning a protective order to accommodate the circumstances. Bankr. Proc. Manual § 7026:16 (2016 ed.).

Plaintiff's Motion for Protective Order contains a certificate of service, but does not appear to contain any certification of conferment or attempted conferment with the Defendants either in the text of the motion or attached to the motion. *See* [ECF No. 35]. At the Hearing, Grissom asserted to the Court that Plaintiff's Counsel had conferred with the Defendants on the Plaintiff's Motion for Protective Order prior to its having been filed. The Court, pursuant to § 105, shall construe this to be procedurally proper based on the assertion of Grissom. Accordingly, the Court will now determine whether Plaintiff has demonstrated good cause to warrant issuing a protective order.

In her Motion for Protective Order, the Plaintiff seeks to prevent the disclosure of her tax returns as irrelevant to the proceedings. [ECF No. 35 at 2]; *see also* Fed. R. Civ. P. 26(b)(1) (requiring that discovery be limited to "any nonprivileged matter that is relevant to any party's

claim or defense…").  Essentially, Plaintiff's argument is that Defendants sought her tax returns because they would be relevant to a claim or defense asserted in Defendants' Motion for Leave, but at present the tax returns are not relevant.  *See generally* [ECF No. 35].  At the Hearing, Plaintiff argued that Defendants' objective was to bootstrap the IRS refunds as community property rather than property belonging to Plaintiff's ex-husband solely.  Defendants vigorously argued that the Plaintiff's tax returns were relevant on that very basis, but at no time did the Defendants present any evidence to demonstrate that their assertions were relevant. Accordingly, the Court finds that the Plaintiff's Motion for Protective Order must be granted.

   *ii)  Defendants' Motion for Protective Order*

   In their Motion for Protective Order, Defendants seek an order from the Court to forbid the disclosure of certain documents requested by the Plaintiff.  [ECF No. 19].  Similar to Plaintiff's Motion for Protective Order, the Defendants' Motion for Protective Order was filed in response to a Request for Production served on each of the Defendants.  *Id.* at 1–2.  The Defendants' Motion for Protective Order cites essentially four specific requests made in the Plaintiff's Request for Protection: (1) documents relating to transfers from Grissom's IOLTA account to certain clients; (2) banking records for Csabi and Rodriguez; (3) income tax records for Csabi and Rodriguez for 2016; and (4) records and documents related to any transfers of real or personal property greater than $1,000.00 since April 12, 2016.  *See generally id.*; *see also* [ECF Nos. 19-4, 19-5, 19-6].  The Defendants' objections to these requests focus on the proportionality and relevance of the requests.  *See generally* [ECF No. 19].  In addition, the Defendants raise the defense of privilege to the discovery of the documents sought by Plaintiff. *Id.*  Plaintiff filed her timely response the Defendants' Motion for Protective Order and argued on the grounds that the Plaintiff is entitled to discovery and none of the objections are founded

on a basis that supports the Court issuing a protective order.  *See generally* [ECF No. 30].

A request for a protective order must meet two requirements in order for the court to find that it is in good order: (1) the certification of conferment or attempted conferment; and (2) demonstrate that the movant needs to be protected from "annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed. R. Civ. P. 26(c)(1).  Only once this has been demonstrated can the Court consider fashioning a protective order to accommodate the circumstances.  Bankr. Proc. Manual § 7026:16 (2016 ed.).

Here, Defendants have met one of the initial burdens by including a certificate of conference in their Motion for Protective Order.  [ECF No. 19 at 10].  Having satisfied the first requirement, Defendants must demonstrate that they need to be protected from "annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed. R. Civ. P. 26(c)(1).  The Court will now examine each of the essentially four categories of production for which Defendants seek protection.

Turning to the first category, Defendants claim that Plaintiff's requests for documents related to numerous transactions to specific individuals or entities are irrelevant, fail to meet the proportionality requirement, and that the documents are subject to attorney-client privilege. [ECF No. 19 1–4].  Plaintiff, in her response, argues that Grissom has been repeatedly ordered by this Court to produce documentation related to the transfers that occurred in his IOLTA accounts since the Proceeds were deposited in October 2015.  [ECF No. 30 at 2–3]; *see also* [Case No. 13-10472, ECF No. 214 at ¶ 2] (citing to [ECF Nos. 181, 188, 191, 195, 201]).  Plaintiff further argues that the funds deposited into Grissom's IOLTA account, i.e. the Proceeds, were property of the Plaintiff's bankruptcy estate and that Grissom spent a portion of said Proceeds prior to this Court's authorization.  [Case No. 16-1004, ECF No. 30 at 2–3].  Despite this backdrop to the

requests, Defendants, nevertheless, seek to avoid the production of documents that are the subject of final orders of this Court.  *Compare* [ECF No. 19] *with* [Case No. 13-10472, ECF No. 214 at ¶ 2].

However, at the Hearing, Plaintiff's Counsel represented that the documentation he really sought was only a copy of the Proceeds check and the deposit slip used to deposit that check into Grissom's IOLTA account.  Grissom's agreed to disclose those two documents to Plaintiff.  The Court ordered that Grissom comply with disclosing those two documents by February 13, 2017, which will satisfy Plaintiff's requests.  [Case No. 16-1004, ECF No. 43]  Therefore, the Court finds that Defendants' Motion for Protective Order, as to the documents sought from Grissom, should be denied as moot.

Second, Plaintiff seeks bank records for Csabi and Rodriguez, including any respective incident of ownership or custodianship.  [Case No. 16-1004, ECF No. 19-5 at 3, 19-6 at 3].  Defendants object to these requests on the basis that Plaintiff has failed to allege their relevance to the proceedings.  [ECF No. 19 at 4].  Even if that relevance should be shown, Defendants urge the same objections as to Grissom's disclosures; namely, that the requests are "irrelevant to any issue or claim…" and that the proportionality requirements necessitate non-disclosure.  [ECF No. 19 at ¶¶ 3-4, 12].  Plaintiff argues, similar to the subsequent objections that Csabi and Rodriguez received property of the estate when Grissom distributed the funds to them instead of distributing the same funds to the chapter 13 trustee and, as a result, Csabi and Rodriguez must disclose the disposition of the funds that had been transferred to them.  [ECF No. 30 at ¶ 4].

At the Hearing, Csabi represented that some portion of the transfer he received was still being retained and that he could deposit the amount of $73,333.00 into the Court's registry.  Counsel for Rodriguez represented to the Court that his client had provided some of the

requested documentation, such as bank records, and was willing to provide further documentation on the bank accounts involved with the transferred funds, including checks written on any bank account holding any portion of the Proceeds transferred to Rodriguez. Plaintiff's Counsel was willing to accept the deposit in lieu of the bank records from Csabi and that the documentation Rodriguez's Counsel represented his client could provide would also satisfy his requests as to Rodriguez.

Therefore, the Court finds that Defendants' Motion for Protective Order should be denied as moot as Csabi and Rodriguez have agreed to provide records Plaintiff represents as acceptable.

Third, Plaintiff seeks income tax records for Csabi and Rodriguez, both personally and any related professional corporation, for 2016 and Defendants object to disclosing these documents on the basis that there is no relevance to the instant matter. [ECF No. 19 at 4–5]. Defendants further allege that ordering the disclosure of the tax returns without a showing of relevancy and materiality is an abuse of discretion and cite to a series of Texas state court cases. *Id.* at 5–7. Plaintiff argues, similar to the previous objection regarding bank records, that Csabi and Rodriguez received property of the estate when Grissom distributed the funds to them instead of distributing the same funds to the chapter 13 trustee and, as a result, Csabi and Rodriguez must disclose their income tax returns due to Grissom's prior testimony regarding the nature of the transfers as being attorney's fees. [ECF No. 30 at ¶¶ 4–5]. As attorney's fees, Plaintiff further argues that the transfers would become income attributable to Csabi and Rodriguez that should be appropriately accounted for in their respective income tax returns. *Id.*

At the Hearing, Rodriguez's Counsel and Csabi made brief arguments as to why their respective tax returns should not be subject to disclosure in this case. During which time,

Defendants produced no evidence to demonstrate why the tax returns should not be disclosed, even if subject to a protective order.  However, Defendants and Plaintiff were able to agree on the production of certain documents or, in the case of Csabi, depositing the sum of $73,333.00 into the Court's registry in lieu of disclosure.  Plaintiff represented that Csabi's and Rodriguez's compliance with the terms of their agreement would satisfy the respective requests for production.  As such, the Court finds that Defendants' Motion for Protective Order, as to preventing the disclosure of Csabi's and Rodriguez's tax returns requested by Plaintiff, should be denied as moot.

Finally, Defendants state, in their prayer for relief, that the Plaintiff's request for records of transfers of real or personal property by Csabi or Rodriguez in the amount of $1,000.00 or more be forbidden.  [ECF No. 19 at 8]; *see also* [ECF Nos. 19-5 at 3, 19-6 at 3].  Defendants offer no basis for their objection in their Motion for Protective Order; it is merely asserted as a parting shot.  *See generally* [ECF No. 19].  Plaintiff's response presents the same argument as with the bank records, namely that Plaintiff is entitled to review documents in order to review the disposition of the Proceeds.  [ECF No. 30 at ¶ 4].

At the Hearing, Csabi agreed to deposit $73,333.00 into the Court's registry and Rodriguez's Counsel agreed, on behalf of his client, to turnover documentation related to the disposition of the transferred funds.  In both cases, Plaintiff's Counsel agreed to these limited responses to the Request for Production.  It is, in the Court's opinion, that these disclosures, namely by Rodriguez, will provide Plaintiff with sufficient documentation on the disposition of the funds.  Moreover, Csabi and Rodriguez admit receiving the transfer from Grissom.  For the purposes of discovery, those admissions eliminate Plaintiff's need for the production of such expansive discovery is greatly diminished at this stage in the matter.  *C.f.* Fed. R. Civ. P. 26(b)(1)

(discussing the scope of discovery and its limitations); *In re Trevino*, 2017 WL 123756, at *8–9 (stating the standards for a motion to compel, including proportionality).   As such, the Court finds that Defendants' Request for Protective Order should be granted as to the requests for records of transfer pursuant to the proportionality requirements of Fed. R. Civ. P. 26(b)(1).

### D.    MOTION FOR LEAVE

Defendants filed their Motion for Leave on January 27, 2017, in which they seek to amend their respective answers to a single joint answer.  [ECF No. 24].  Defendants state that the basis for this request is "in the interest of justice."  *Id.*  Defendants provide no further assertions or explanations in the Motion for Leave.  *Id.*

Upon filing a pleading, the filing party may amend that pleading once as a matter of course within 21 days from serving it or a responsive pleading being filed.  *See generally* Fed. R. Civ. P. 15; *see also* Fed. R. Bankr. P. 7015.  Rule 15 states that leave should be given when justice so required when the movant's 21-day period to amend has expired.  Fed. R. Civ. P. 15(a)(2); *see, e.g.*, *Thomas*, 832 F.3d at 590.  The Fifth Circuit in *Thomas* stated that the party seeking leave to amend must plead with sufficient specificity as to the basis of the request to amend.  *Id.*

Here, Defendants provide the singular assertion of "in the interest of justice" as the basis for amending their respective answers in their Motion for Leave.  [ECF No. 24].  There is no specificity included, merely a conclusory statement about reliance upon, implicitly, Rule 15 and the interest of justice.  *Id.*  In the Proposed Amended Answer, Defendants assert a series of counterclaims that are predicated upon an alleged proper association of Rodriguez and Csabi by Grissom.  [ECF No. 24-1 at 5–6].  Defendants also seek to interplead Plaintiff's ex-spouse, Daniel Wright on the basis that he too signed a contract with Grissom and there is now an

alleged controversy that requires him to be pleaded into the case.  *Id.* at ¶¶ 35–42.  However, Defendants also allege that Mr. Wright is not under the jurisdiction of this Court.  *Id.* at ¶ 3; *see also* [ECF No. 12 at ¶ 2]; [ECF No. 11 at ¶ 2].

At the Hearing, Defendants presented arguments regarding their Motion for Leave as to why it should be granted that the Court will entertain despite Defendants' abject failure to plead with specificity in the Motion for Leave.  Defendants' primary consideration was Plaintiff's treatment of the enrolled agent that Grissom arranged to assist with the recovery of potential IRS refunds.  Plaintiff testified at length regarding the letter that she and her ex-spouse sent to the enrolled agent, unbeknownst to either Grissom or her Counsel, in October 2016 that terminated the relationship on the basis of a perceived conflict of interest.  *See also* Defs. Exh. 1. Defendants argued that this action constitutes a breach of contract, as to Plaintiff's contract with Grissom, when Plaintiff failed to cooperate with Grissom's efforts to recover potential refunds due Plaintiff or her ex-spouse and terminated the power of attorney that had been provided.  *See also* [ECF No. 24-1 at ¶¶ 32–35]; *c.f.* [Case No. 13-10472, ECF Nos. 123-5, 123-7].  The Court is not convinced that the Defendants' arguments overcome the deficiencies of the bare assertion in the Motion for Leave.  *Compare* [ECF No. 24-1] *and* [ECF No. 24] *with* Fed. R. Civ. P. 15. Moreover, the Proposed Amended Answer is based on facts that have been before the Court in Plaintiff's bankruptcy case for nearly a year that, rather than being included in any of the initial answers, are just now, months later, being brought to bear.  *C.f. C3PO Int'l, Ltd.*, 2016 WL 5794747, at *2.  Even considering Plaintiff's disclosure of the termination of the power of attorney to the enrolled agent as being untimely, Defendants have insufficiently demonstrated that the Motion for Leave is not dilatory.  *See generally Krupski*, 560 U.S. at 553.

In addition to the considerations of Rule 15, the Court also considers Fed. R. Civ. P. 13 as

it governs counterclaims to determine whether the counterclaims stated in the Defendants' Proposed Amended Answer are even appropriately sought by Defendants. Rule 13 requires that certain counterclaims are compulsory and must be pleaded so long as they are (1) against an opposing party; (2) "arise out of the transaction or occurrence that is the subject of the opposing party's claim;" and (3) "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). Rule 13 states two exceptions that are inapplicable here. Fed. R. Civ. P. 13(a)(2). Rule 13 further provides that counterclaims that do not come under the foregoing portion of the rule are permissive. Fed. R. Civ. P. 13(b). Here, Defendants' Motion for Leave seeks to assert counterclaims arising from the underlying transaction, the Plaintiff's and her ex-spouse's joint settlement that was previously approved by this Court, whereas the Plaintiff's claims are grounded in Grissom's handling of the funds post-settlement. *Compare* [ECF No. 24-1] *with* [ECF No. 1] *and* Fed. R. Civ. P. 13(a). Without reaching the merits of the alleged claims, the Court cannot conclude that the counterclaims stated in the Proposed Amended Answer are appropriately asserted under Rule 13 as they arise out of a different, albeit related, transaction or occurrence than the one asserted in Plaintiff's complaint. Moreover, the counterclaims being raised herein are those that may be subject to mandatory abstention whereas the existing claims are largely grounded in the Code. *Compare* [ECF No. 24-1] *with* 28 U.S.C. § 1334(c)(2). The Court can only reach one conclusion—that the counterclaims and interpleader included in the Proposed Amended Complaint would, at a minimum, cause undue delay in the instant case.

In light of the provisions of Rule 15, and also those of Rule 13, the Court cannot conclude that leave should be given to permit the Defendants to amend their answers. As such, the Court finds that Defendants' Motion for Leave should be denied.

## V.   CONCLUSION

The Court has before it a trio of motions seeking interlocutory relief in the instant case and has heard lengthy testimony in these matters.  In light of the foregoing, the Court finds that Plaintiff, with Grissom's representation of Plaintiff's pre-filing conferment, has demonstrated that a protective order is warranted to preclude the disclosure of Plaintiff's tax returns.  As such, Plaintiff's Motion for Protective Order is granted.  During the course of the hearing, many of the objections lodged by the Defendants were resolved due to agreement between the parties and, the Defendants' Motion for Protective Order is moot to that extent that the parties came to an agreement, but the issue of the requested tax returns for Csabi and Rodriguez was unresolved. Defendants failed to provide any evidence to support their arguments against the disclosure of their tax returns.  Moreover, Defendants argued against the disclosure of transfers of personal or real property, as requested by the Plaintiffs, on the basis of the proportionality requirements for discovery.  The Court, therefore, finds that Defendants' Motion for Protective Order should be: denied as moot as to the bank records, Grissom's supporting documentation for the transfers in his IOLTA account, and Csabi's and Rodriguez's tax returns; and granted as to the disclosure of transfers of personal or real property.  Furthermore, the Court finds that the Defendants' Motion for Leave should be denied as Defendants improperly pleaded their motion and failed to demonstrate that the delay in asserting counterclaims on the basis of an alleged breach of contract by not only Plaintiff, but also Plaintiff's ex-spouse, was not dilatory.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 02/21/2017.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge