

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

ENTERED
12/01/2017

| | | |
|---|---|---|
| IN RE: | § | |
| VICKY GRIBBLE WRIGHT; aka | § | CASE NO: 13-10472 |
| WRIGHT; aka WRIGHT; fdba VICKY | § | |
| WRIGHT/BORDERS CONTRACTORS | § | |
| INC. | § | |
|     Debtor | § | |
| | § | CHAPTER  13 |
| | § | |
| VICKY GRIBBLE WRIGHT | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 16-1004 |
| | § | |
| WILLIAM A. CSABI, *et al* | § | |
|     Defendants | § | Judge EDUARDO V. RODRIGUEZ |

## MEMORANDUM OPINION
## FINDING DEFENDANTS LIABLE FOR VIOLATIONS OF 11 U.S.C. §§ 327, 329, 362 & <u>504 BANKRUPTCY LOCAL RULE 2014-1 & F. R. BANKR. P. 2014 & 2016</u>
### *Resolving in Part, ECF No. 1*

### I. INTRODUCTION

"If citizens cannot trust that laws will be enforced in an evenhanded and honest fashion, they cannot be said to live under the rule of law."[1]  When lawyers appear before this Court, they are charged with knowledge of the United States Bankruptcy Code,[2] the Federal Rules of Civil Procedure ("*Civil Rules*"), Federal Rules of Bankruptcy Procedure ("*Bankruptcy Rules*, *Rules*, or *Rule*"), Southern District of Texas Bankruptcy Local Rules ("*Bankruptcy Local Rules*, *BLR*, or *Local Rule*"), and this Court's Procedures and are obliged to follow those Rules and Procedures, without which it could be said that we are not living "under the rule of law."  Let it be clear to all

---

[1] Dale Carpenter, *Flagrant Conduct: The Story of Lawrence v. Texas* 108 (2012).

[2] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

that appear before this Court that flagrant violations of the Code and the aforementioned Rules and Procedures will not be tolerated and such violations will be dealt with swiftly by this Court.

Turning to the merits of the case *sub judice*, three local attorneys, James P. Grissom ("*Grissom*"), William A. Csabi ("*Csabi*") and Francisco J. Rodriguez ("*Rodriguez*") (collectively "*Defendants*") chose to test this Court's resolve.  Vicki G. Wright "(*Debtor* or *Plaintiff*") filed the instant complaint seeking disgorgement of an unauthorized fee, turnover of property of the estate, and violation of the automatic stay against the three Defendants.  Specifically, Plaintiff has alleged that Defendants violated 11 U.S.C. §§ 105, 329, 330, 362, 504, 542 and Rules 2016, and 2017 as well as Texas Rules of Professional Conduct 1.04(d) and 1.04(f).  On August 30, 2017,[3] this Court conducted a three-day, bifurcated trial on the merits of Plaintiff's claims against the Defendants as to liability only.  Therefore, the instant Memorandum Opinion will address the alleged violations of §§ 329, 362, 504, and Rule 2016. Additionally, and pursuant to the Court's inherent authority provisioned by § 105, the Court will also address patent violations of § 327, Rule 2014, and BLR 2014-1.  However, §§ 330, 542 and Rule 2017 relate more to the damages that Plaintiff is seeking, and thus those matters, *inter alia*, will be reserved for a separate trial.  Additionally, pursuant to the authority granted by 28 U.S.C. §1334(c)(1) and in the "interest of comity" the Court declines Plaintiff's invitation to address the alleged violations of the Texas Disciplinary Rules of Professional Conduct.  Those matters are better suited for the appropriate tribunal, including but not limited to the State Bar of Texas.[4]

At trial, Plaintiff was represented by counsel, Abelardo Limon Jr. ("*Limon*").  Both Grissom and Rodriguez appeared pro se, while Csabi was represented by counsel, Richard O.

---

[3] Citations to trial minutes shall take the form Min. Entry (date).

[4] Based on evidence presented at trial, there are State Bar of Texas complaints pending against all three Defendants. *See* Pl's. Exs. 32, 33, 34; *see also* Min. Entry (8/31/2017).

Habermann.  At the conclusion of trial, the matter was taken under advisement and is now ripe for consideration.  The Court has considered the pleadings; the arguments presented by the parties; the evidence; and relevant case law and now issues the instant ruling.

## II. JURISDICTION, VENUE, AND THIS COURT'S CONSITUTIONAL AUTHORITY TO ENTER A FINAL ORDER

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Specifically, 28 U.S.C. § 1334(e), states that the district court in which a case under title 11 is pending has exclusive jurisdiction "(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.  28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).  This is a core matter as it "concern[s] the administration of the estate."  § 157(b)(2); s*ee also In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).[5]

This Court may only hear a case in which venue is proper.  Venue with respect to proceedings arising under title 11 is governed by 28 U.S.C. § 1409, and "may be commenced in the district court in which such case is pending."  Plaintiff resides in Harlingen, Texas, and has a Chapter 13 case under title 11 pending before this Court.  Therefore, venue is proper within this jurisdiction.

---

[5] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

Finally, this Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters). However unlike the claims in *Stern*, the instant matter derives solely from the Code, Rules, and Local Rules, specifically §§ 105, 327, 329, 504, and 362; Rule 2014 and 2016; and BLR 2014-1, and cannot exist outside of a bankruptcy proceeding. *Compare* ECF No. 24 *with Stern*, 564 U.S. at 499 ("Vickie's claim, in contrast, is in no way derived from or dependent upon bankruptcy law; it is a state tort action that exists without regard to any bankruptcy proceeding."). As such, *Stern* is not applicable and this Court holds constitutional authority to enter a final order and judgment with respect to the core matter at bar.

## III. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014. Any finding of fact more properly considered a conclusion of law, or any conclusion of law more properly considered a finding of fact, should be so considered. The case at bar is an adversary proceeding brought by Plaintiff against her former counsel arising from actions taken in connection with Plaintiff's Chapter 13 bankruptcy.[6] Due to the tortured history of this case and overlapping nature of these proceedings, this Court adopts and incorporates by reference each of the finding of facts made in the Bankruptcy Case Memorandum Opinions; Bankr. ECF Nos. 91, 180; the findings of facts made in the Adversary Proceeding Memorandum Opinion; ECF No. 48; and the findings of facts in all relevant prior orders in the Bankruptcy Case and Adversary Proceeding. Bankr. ECF Nos.

---

[6] Citations to the docket in this adversary proceeding styled *Wright v. Csabi et. al.*, 16–1004 (the "*Adversary Proceeding*"), shall take the form "ECF No. ——," while citations to the bankruptcy case, 13-10472 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ——."

72, 92, 114, 120, 126, 141, 159, 162, 175, 177, 256, 280; ECF Nos. 49, 56 (collectively, the "*Orders*").

On October 31, 2013, Plaintiff filed a petition under Chapter 13 of the Code.  Bankr. ECF No. 1.  On March 26, 2014, Plaintiff and Grissom executed an "Amended Attorney Consultation and Fee Contract for Contingency Cases," which reflects a "fee-sharing agreement" with Rodriguez that states, in part, as follows:

> 2.03 Attorney proposes to associate on this matter with another lawyer or law firm.  Client's execution of this Agreement represents Client's written consent to the following terms of the association and fee-sharing agreement:
> a. [Rodriguez] will participate in the fee-sharing agreement.
> b. Fees will be divided based on an agreement by the above-referenced lawyers, law firms and Attorney to assume joint responsibility for the representation.
> c. [Rodriguez] and [Grissom] will share equally in all attorneys [sic] fees recovered.

Pl.'s Ex. 1, ¶ 2.03.  On April 22, 2014, Grissom and Csabi signed and entered into an agreement that was self-described as a "fee-sharing arrangement," which states, in part, as follows:

> a. [Grissom] and [Csabi] will participate equally in the fee-sharing arrangement for the division of attorneys [sic] fees according to the contract between [Plaintiff] and [Grissom].
> b. Fees will be divided based on an agreement by the above-referenced lawyers, law firms and Attorney to assume joint responsibility for the representation.

Pl.'s Ex. 2.

On December 8, 2014, an Application to Employ Grissom, and Grissom alone, as Special Counsel to Plaintiff was filed on the Court's CM/ECF docket, which is to say that Grissom's fee sharing agreements with Csabi and Rodriguez were not filed of record or in any other manner disclosed to the Court.  Bankr. ECF No. 71.  The Court thereafter approved the employment of Grissom, and Grissom alone, as Special Counsel to Plaintiff on December 31, 2014.  Bankr. ECF No. 72.

On April 8, 2016, this Court issued an order awarding $90,000.00 in attorney's fees to Grissom, which were subtracted from Plaintiff's portion of the previously approved settlement proceeds,[7] and this Court ordered Grissom to remit the remainder of the settlement proceeds to Cindy Boudloche, the Chapter 13 trustee, for the benefit of the Plaintiff's Chapter 13 estate. Bankr. ECF No. 114. Despite that order, on April 12, 2016, Csabi and Rodriguez each received a $73,333.00 wire transfer from Grissom's Interest on Lawyers Trust Account (IOLTA). Pl.'s Ex. 21, at 25. On June 10, 2016, Limon faxed a demand letter to Rodriguez and emailed a similar demand letter to Csabi notifying each individual that the $73,333.00 transfer that each had received from Grissom "[were] part of the debtor's bankruptcy estate per the Court's order." and demanded turnover of the funds within the next five (5) days.[8] Pl.'s Exs. 27, 28. A little over eight months later and on February 13, 2017, Csabi deposited the amount of $73,333.30 into the Court's registry for safe keeping. Rodriguez has still not complied with Limon's demand.

On July 26, 2016, an Agreed Order between Plaintiff and Grissom was executed by the parties and signed by this Court, which directed Grissom to, *inter alia*, turnover Plaintiff's portion of the settlement funds in the amount $133,085.10 by August 1, 2016. "The check shall be made payable to the Limon Law Office IOLTA Trust Account and shall be held by the Limon Law Office pending further orders of this Court. *The Court reiterates it's finding that such funds are property of the Debtor's chapter 13 estate*." Bankr. ECF No. 175 (emphasis added). Despite the Agreed Order issued, August 1, 2016 passed without Grissom's compliance.

---

[7] As discussed ad nauseam in previous opinions and orders, there was an initial $650,000 settlement. Of that, $326,914.90 was non-debtors portion which was paid to the Internal Revenue Service on his behalf. The remaining monies were the Plaintiff's portion. And of the Plaintiff's portion, there was an immediate $100,000 carveout to the Chapter 7 trustee, which was approved by this Court. Bankr. ECF No. 91, 92. The total amount remaining was $223,085.10. After the subtraction of Grissom's $90,000 in attorney's fees, the total remaining amount is $133,025.10.

[8] The body of the letter states it was also delivered by certified mail, but no evidence was presented to establish this fact.

On September 6, 2016, Plaintiff initiated the instant adversary proceeding.  ECF No. 1.
On January 23, 2017, Grissom filed a "Motion for Leave to Amend Motion to Approve
Employment of Counsel," two years after the Court approved Grissom's employment.  Bankr.
ECF No. 238.   As a result of that motion, on February, 28, 2017, this Court issued the following
order, to wit:

> Grissom filed his Application to Employ on December 8, 2014, and it was
> approved by the court on December 31, 2014. *See* [ECF Nos. 71, 72]. In the
> affidavit filed with the Application to Employ, Grissom specifically swore that he
> has "no connection with … any … parties in interest … [and] that the foregoing
> statement made pursuant to Bankruptcy Rule 2014(a) … is true and correct to the
> best of my knowledge." [ECF No. 71 at 3]. Since that time, Grissom has operated
> under his court-approved employment without any concern regarding the terms of
> his employment, both disclosed and undisclosed, until May 2016, when the
> Debtor initiated the dispute at bar. *See generally* [ECF No. 119]. However, now,
> over 2 years after the court granted his employment and more than 7 months since
> the Debtor initiated this dispute, Grissom seeks to change the circumstances of his
> employment. *Compare* [ECF No. 71] and [ECF No. 72] and [ECF No. 119] *with*
> [ECF No. 238] and [ECF No. 238-2] and [ECF No. 238-1]. For this, Grissom
> argues that the Debtor had knowledge of these arrangements. [ECF No. 238-2 at
> ¶¶ 12–13]. Yet, it was Grissom who signed the Application to Employ on behalf
> of the Debtor and, as the Debtor's proposed attorney in the Application to
> Employ, Grissom had access to all of the documentation he only now seeks to be
> weaponized, but did not feel it necessary to disclose then. *Compare* [ECF No.
> 238-2 at ¶¶ 12–13] *with* [ECF No. 71].  . . . However, Grissom was in the best
> position to ensure that his Application to Employ was in full compliance with the
> relevant legal standards and statutory obligations. Grissom did not disclose the
> involvement of Mr. William Csabi nor Mr. Francisco Rodriguez at any point in
> his Application to Employ.

Bankr. ECF No. 256, at 2.

At the start of trial on August 30, 2017, this Court ordered the trial bifurcated[9] as to
Defendants' liability and Plaintiff's damages; arguments and evidence presented was limited to
only the issue of liability.  Min. Entry (8/30/2017).   Although Plaintiff presented clear and
credible evidence as to Defendants' liability, Defendants did not present any credible physical or

---

[9] The trial was ordered bifurcated to appease the parties regarding an evidentiary dispute that was easier resolved in
this manner so as not to delay trial.

testimonial evidence rebutting Plaintiff's allegations of Code and Rule violations.   Instead, throughout the trial, the Defendants mostly focused their energies on wholly unrelated issues.[10] *See* Min. Entry (8/30/2017–9/1/2017).

Moreover, the documentary and testimonial evidence presented at trial simply reaffirmed this Court's prior findings of fact and conclusions of law in previous proceedings involving the same parties before it in the instant matter.  Bankr. ECF No. 180; ECF No. 48; Orders.  This is to say that the documentary and testimonial evidence conclusively established that the two $73,330.00 wire transfers, each to Csabi and Rodriguez for a total of $146,660.00, in unauthorized transactions further corroborated that the undisclosed and unauthorized fee sharing agreements existed among the Defendants. Min. Entry (8/30/2017–9/1/2017); Pl.'s Ex. 21, at 25.

## IV. CONCLUSIONS OF LAW

### A.  The Finality of Rule 8002

Appeals from this Court's "final judgments, orders, and decrees," 28 U.S.C. § 158 (a)(1), must be made "in the time provided by Rule 8002 of the Bankruptcy Rules."   § 158 (c)(2). Additionally, an appeal must be filed within fourteen days after entry of this Court's judgment, order, or decree.  Fed. R. Bankr. P. 8002.  The Fifth Circuit has found that "§ 158, expressly requires that the notice of appeal be filed under the time limit provided in Rule 8002 . . . ."  *In re Berman-Smith*, 737 F.3d 997, 1003 (5th Cir. 2013).  If no timely notice of appeal is filed in a bankruptcy case, it "deprives both the district court and [the Fifth Circuit] of jurisdiction."  *In re Dorsey*, 870 F.3d 359 (5th Cir. 2017); *In re ASARCO, L.L.C.*, 616 F. App'x 178, 179 (5th Cir.

---

[10] Ample credible evidence was presented and is on the record as showing numerous potential ethical violations that troubled this Court; however, as stated, this Court will leave those matters to the appropriate tribunal, including, but not limited to, the State Bar of Texas.

2015) (finding the district court properly dismissed an appeal that was not filed within the fourteen days required by Rule 8002.)   Therefore, unless a party files "a notice of appeal sufficient to confer jurisdiction . . . , *no court* has jurisdiction to review . . . ," and the bankruptcy court's decision is final.  *In re Dorsey*, 870 F.3d at 359 (emphasis added).

Here, in both the Adversary Proceeding and the Bankruptcy Case, this Court has issued multiple Memorandum Opinions and orders.  Other than one order appealed by Grissom that was later dismissed,[11] no order relevant to the Plaintiff's bankruptcy case or this Adversary Proceeding was appealed by the Defendants.   Additionally, all orders issued by this Court are older than fourteen days, meaning the statutory period for a timely appeal of any previous order this Court has issued has passed.  *See* 28 U.S.C. § 158; Fed. R. Bankr. P. 8002.  Because the time allowed for a timely appeal has passed, all previous orders of this Court are final.  *See In re Dorsey*, 870 F.3d at 359.   More specifically, the orders, which include: (1) an agreed order between Plaintiff and Grissom stating that the settlement funds are property of the estate, Bankr. ECF No. 175, and (2) an order  finding that Grissom did not disclose the employment of Csabi or Rodriguez, Bankr ECF No. 256, are final orders because they are older than fourteen days and no appeal was ever filed.   Thus, it is conclusively established that (i) Plaintiff's portion of the settlement funds are property of the estate, and (ii) the employment of Csabi and Rodriguez was never disclosed to—much less approved by—this Court resulting in violations of multiple sections of the Code, Bankruptcy Rules, and Local Rules as discussed more copiously in this memorandum opinion.

## B.  Employment of Special Counsel

Special counsel acting on behalf of a debtor or the estate must seek lawful employment

---

[11] Bankr. ECF No. 280, dismissed on May 15, 2017.

from this Court while simultaneously following the required Bankruptcy Rules.  11 U.S.C. §

327; Fed. R. Bankr. P. 2014.  Although some courts have found that Chapter 13 debtors do not

have to seek court approval of the employment of special counsel because § 327 only applies to

trustees, *In re Jones*, 505 B.R. 229, 233 (Bankr. E.D. Wis. 2014), other courts have found that

"'[e]mployment of professional persons,' governs the employment of special counsel to the

estate representative, *including Chapter 13 debtors*." *In re Lee*, 495 B.R. 107, 114 (Bankr. Mass.

2013) (emphasis added); *see In re Goines*, 465 B.R. 704, 707 (Bankr. N.D. Ga. 2012) ("The most

appropriate person to make these specific factual statements, and the person in the best position

to do so, is the debtor, not the Chapter 13 trustee").  Irrespective, in the Southern District of

Texas, special counsel seeking employment "in an individual chapter . . . 13 case for the purpose

of prosecuting a tort claim must . . ." comply with Bankruptcy Local Rules, which requires filing

an application or a motion seeking leave of this requirement.  BLR 2014-1(d).  More specifically,

under § 327(e) of the Code, counsel employed "for specified special purpose, other than to

represent the trustee in conducting the case" must be approved by this Court.  To receive this

Court's approval for employment of special counsel there must be an application that

> state[s] the specific facts showing the necessity for the employment, the name of
> the person to be employed, the reasons for the selection, the professional services
> to be rendered, any proposed arrangement for compensation, and, to the best of
> the applicant's knowledge, all of the person's connections with the debtor,
> creditors, any other party in interest, their respective attorneys and accountants,
> the United States trustee, or any person employed in the office of the United
> States trustee. The application shall be accompanied by a verified statement of the
> person to be employed setting forth the person's connections with the debtor,
> creditors, any other party in interest, their respective attorneys and accountants,
> the United States trustee, or any person employed in the office of the United
> States trustee.

Fed. R. Bankr. P. 2014(a).  The Fifth Circuit has noted that "[a]lthough this provision does not

explicitly require ongoing disclosure, case law has uniformly held that under Rule 2014(a), . . .

full disclosure is a continuing responsibility . . . ," and "failure to disclose is sufficient grounds to revoke an employment order and deny compensation."  *In re W. Delta Oil Co., Inc.*, 432 F.3d 347, 355 (5th Cir. 2005) (internal quotations omitted).  "The standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process."  *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1258 n. 6 (5th Cir. 1986).  Strict standards "enable the court to control administrative expenses and to prevent those performing work without the necessary authority from being 'officious intermeddler[s] or gratuitous volunteer[s].'"  *In re Sound Radio, Inc.*, 145 B.R. 193, 202 (Bankr. D.N.J. 1992) (quoting 2 *Collier on Bankruptcy* ¶ 327.02 (15th Ed.1992)).

Despite not being specifically pled, it is clear to this Court that Defendants violated § 327, Rule 2014, and BLR 2014-1, and therefore, this Court will exercise its inherent powers and attend to these violations in order to "prevent an abuse of process."   § 105(a);[12] *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) ("Section 105(a) simply authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code.").  Although some courts have found that Chapter 13 debtors do not have to seek court approval of the employment of special counsel because § 327 only applies to trustees, this Court is not persuaded by that reasoning and is in agreement with the other courts that have found that "'[e]mployment of professional persons,' governs the employment of special counsel to the estate representative, *including Chapter 13 debtors*."  *In re Lee*, 495 B.R. at 114 (emphasis added); *see In re Goines*, 465 B.R. at 707.  Grissom sought Court approval of his employment in the Plaintiff's case, but the same cannot be said for either Csabi or Rodriguez. *See* Bankr. ECF No. 71.  This Court finds that Csabi and Rodriguez clearly violated § 327 by not

---

[12] "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

seeking this Court's approval for their employment when they are required to do so.

Simply because Grissom sought Court approval does not mean that his actions were proper. To be clear, this Court finds that Grissom, in addition to Csabi and Rodriguez, violated Rule 2014. Grissom failed to comply with Rule 2014 because he failed to disclose "any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a). Specifically, Grissom failed to include the fee arrangements with Csabi and Rodriguez, which had been signed and in place months before Grissom filed his initial application to employ with this Court. *Compare* Pl.'s Ex. 1, ¶ 2.03 and Pl.'s Ex. 2 *with* Bankr. ECF No. 71 (showing evidence of Grissom's agreements with Rodriguez and Csabi from March 2014 and April 2014 and Grissom filing an application to employ in December 2014 not disclosing said agreements to the Court). Furthermore, the Fifth Circuit has noted that case law has uniformly held that full disclosure is a continuing responsibility; *In re W. Delta Oil Co., Inc.*, 432 F.3d at 355; here, Grissom woefully failed to meet this standard. Not once were the fee sharing agreements between Defendants disclosed to this Court despite multiple opportunities to do so. *See, e.g.*, Bankr. ECF Nos. 71, No. 107. Neither Grissom's Application for Employment nor Amended Application for Attorney's Fees made the required disclosures. *See, e.g.*, Bankr. ECF Nos. 71, No. 107. Grissom's failure to comply with Rule 2014 does not absolve Csabi or Rodriguez from their failures to comply with Rule 2014. Both Csabi and Rodriguez violated Rule 2014 because they did not: (1) file the required application and (2) file the mandatory disclosure statements required by the Rule.

Turning to BLR 2014-1, similarly to § 327 and Rule 2014, this Court finds Defendants violated BLR 2014-1 due to their failures to accomplish the necessary filings. Starting with Grissom, in this District, an application of an attorney for a debtor must have attached the

statement required by § 329 and Rule 2016.  BLR 2014-1(a).  As discussed further in the latter portions of this opinion, Grissom did not file an application that met the standards of § 329 and Rule 2016, and therefore, this Court finds that Grissom violated BLR 2014-1(a).  In regards to Csabi and Rodriguez, in this District, special counsel seeking employment "in an individual chapter . . . 13 case for the purpose of prosecuting a tort claim must . . . ." file an application to be employed or file a motion seeking leave of the requirement.  BLR 2014-1(d).  Pursuant to the evidence presented at trial, Csabi and Rodriguez entered into agreements with Grissom to help Grissom prosecute the Plaintiff's tort claim against API Pipe & Supply, LLC in connection with Plaintiff's Chapter 13 case.  *See* Pl.'s Exs. 1, 2; Min. Entry (8/31/2017).   BLR 2014-1(d) mandated that Csabi and Rodriguez file an application to be employed or file a motion seeking leave of the requirement but neither did so.  Thus, this Court finds that both Csabi and Rodriguez violated BLR 2014-1(d).

## C.  Employment of Any Counsel

*Any* attorney representing a debtor *in connection* with a bankruptcy case must file a disclosure statement with this Court detailing

> the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329 (a).  An attorney's services are considered in connection with a bankruptcy case when services rendered or to be rendered by an attorney have or will have an impact on the debtor's bankruptcy case.  *In re Healey*, No. 15-60471, 2016 WL 4249897, at *4 (Bankr. E.D. Tex. Aug. 8, 2016); *In re Mayeaux*, 269 B.R. 614, 628 (Bankr. E.D. Tex. 2001); *In re Keller Fin. Servs. of Florida, Inc.*, 248 B.R. 859, 879 (Bankr. M.D. Fla. 2000); *In re Rheuban*, 121 B.R. 368, 378 (Bankr. C.D. Cal. 1990); *In re Ostas*, 158 B.R. 312, 321 (N.D.N.Y. 1993) (all cases standing

for the proposition that an attorney's services are in connection with a bankruptcy case when they have or will have an impact on debtor's bankruptcy case). The mandatory disclosure statement required by § 329 must "includ[e] whether the attorney has shared or agreed to share the compensation with any other entity," and the statement must "include the particulars of any such sharing or agreement to share by the attorney . . . ." Fed. R. Bankr. P. 2016(b). "These provisions apply to *every* attorney employed by every debtor in every chapter, regardless of the purpose for which the attorney is retained, and notwithstanding the fact that an attorney will not be seeking formal employment by, nor compensation from, the bankruptcy estate." *In re Fair*, No. 15-33400-SGJ-13, 2016 WL 3027264, at *13 (Bankr. N.D. Tex. May 18, 2016) (emphasis added). Congress enacted these provisions to ease its concern that a debtor's payments to her attorney present a "serious potential for evasion of creditor protection provisions of the bankruptcy laws." H.R. Rep. No. 95–595, at 329 (1977). Thus, "[t]he honest and comprehensive disclosure of compensation payments plays a vital role in maintaining the integrity of the bankruptcy system." *In re Fair*, 2016 WL 3027264 at *13 (citing *In re Mayeaux*, 269 B.R. at 628).

Defendants represented Plaintiff in connection with the instant Bankruptcy Case because the services rendered by Defendants in the lawsuit against API Pipe & Supply, LLC had an impact on Plaintiff's bankruptcy case when the Defendants achieved the settlement funds of $223,085.10 on behalf of Plaintiff which became property of the bankruptcy estate. *See* Bankr. ECF No. 107, Ex. 1; Pl. Ex. 17; *In re Healey*, 2016 WL 4249897, at *4; *In re Mayeaux*, 269 B.R. at 628; *In re Keller Fin. Servs. of Florida, Inc.*, 248 B.R. at 879; *In re Rheuban*, 121 B.R. at 378; *In re Ostas*, 158 B.R. at 321 (all cases finding an attorney's services are considered in connection with a bankruptcy case when services rendered or to be rendered by an attorney have or will

have an impact on the debtor's bankruptcy case).  Thus, as Defendants represented Plaintiff in connection with the Bankruptcy Case, Defendants are required to comply with § 329 disclosure requirements.  *See In re Healey*, 2016 WL 4249897, at *4; *In re Mayeaux*, 269 B.R. at 628; *In re Keller Fin. Servs. of Florida, Inc.*, 248 B.R. at 879; *In re Rheuban*, 121 B.R. at 378; *In re Ostas*, 158 B.R. at 321.

Rule 2016 instructs attorneys how to comply with § 329 disclosure requirements. According to Rule 2016, Grissom was required to disclose "whether [he] ha[d] shared or agreed to share the compensation with any other entity," and to "include the particulars of any such sharing or agreement to share."  Fed. R. Bankr. P. 2016(b).  When Grissom made his filings before the Court, Grissom did not disclose that he had shared or agreed to share the compensation with Csabi and Rodriguez, and Grissom did not include the particulars of the sharing or agreement to share.  *See* Bankr. ECF Nos. 71, 107.  Additionally, because Csabi and Rodriguez failed to make any filings in the Bankruptcy Case disclosing their fee sharing agreements with Grissom they also violated Rule 2016—and consequently § 329—because Rule 2016 and § 329 leave no room for silence.  As stated above, the requirements of § 329 and Rule 2016 applied to Defendants because their representation was in connection with Plaintiff's bankruptcy, and the requirements of § 329 and Rule 2016 applied even though Csabi and Rodriguez failed to seek formal employment from the Court.  *See In re Fair*, 2016 WL 3027264, at *13.  Therefore, having failed to provide full and complete disclosure as required by the Code and the Rules, the Court finds that Defendants clearly violated § 329 and Rule 2016, which completely undermines the integrity of the bankruptcy system.  *See id.*

**D.  Prohibition on Fee Sharing**

There is no doubt that "§ 504 of the Code . . . flatly prohibits the splitting of fees without

prior court approval." *In re Anderson*, 936 F.2d 199, 203 (5th Cir. 1991).  Specifically, under §

504(a),

> (a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share--
>     (1) any such compensation or reimbursement with another person; or
>     (2) any compensation or reimbursement received by another person under such sections.

11 U.S.C. § 504(a).  Courts widely acknowledge that the exceptions to the prohibition on sharing

compensation found in § 504(b) and § 504(c) are limited only to fee sharing between "(1)

partners or associates in the same professional association, partnership, or corporation; (2)

attorneys for petitioning creditors that join in a petition commencing an involuntary case; and (3)

an attorney and a bona fide public service attorney referral program." *In re Smith*, 397 B.R. 810,

816 (Bankr. E.D. Tex. 2008); *see In re Harris-Nutall*, 572 B.R. 184, 190 (Bankr. N.D. Tex.

2017); *In re Ferguson*, 445 B.R. 744, 752–54 (Bankr. N.D. Tex. 2011); *In re Bradley*, 495 B.R.

747, 767 n.11 (Bankr. S.D. Tex. 2013); *In re Ihe*, No. 14-33382-H3-13, 2014 WL 4104204, at *2

(Bankr. S.D. Tex. Aug. 18, 2014).  Three elements must be satisfied to find a violation of §

504(a): (1) a person or entity was awarded compensation or reimbursement under § 503(b)(2)[13]

or § 503(b)(4);[14] (2) said person or entity shared or agreed to share in the awarded compensation

---

[13] Per § 503(b)(2), "compensation and reimbursement awarded under section 330(a) of this title" is an allowed administrative expense.  § 503(b)(2).  In turn, § 330(a)(1) awards compensation to a professional person employed under § 327 and, furthermore, § 330(a)(4)(B) states that:

> In a . . . chapter 13 case . . . , the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(1),(a)(4)(B).

[14] Section 503(b)(4) allows as an administrative expense "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection." § 503(b)(4). And those relevant sections of § 503(b)(3) allow as administrative expenses for the actual, necessary expenses incurred by:

or reimbursement; and (3) the exceptions found in § 504(b) and § 504(c) do not apply to the person or entity that shared or agreed to share in the awarded compensation or reimbursement. *In re Smith*, 397 B.R. at 817; *In re Harris-Nutall*, 572 B.R. at 190; *In re Fair*, No. 15-33400-SGJ-13, 2016 WL 3027264, at *11 (Bankr. N.D. Tex. May 18, 2016). "Importantly, the prohibition on fee sharing applies even though such fee sharing (or fee-splitting) might otherwise be authorized under state bar rules applicable to the professionals." *In re Age Ref., Inc.*, 447 B.R. 786, 798–99 (Bankr. W.D. Tex. 2011). Section 504's purpose is to protect the bankruptcy estate from potential abuse by professionals seeking compensation who are tempted by maximizing their earnings to the detriment of the estate. *See In re Fair*, 2016 WL 3027264, at *11; *In re Harris-Nutall*, 572 B.R. at 193. And courts have found that a "[v]iolation of § 504(a) is dependent only upon a finding that the prohibited conduct occurred. It does not also require a finding that such conduct actually defeated or compromised the policies underpinning the prohibition." *In re Smith*, 397 B.R. at 819 (quoting *In re Peterson*, No. 04-01469, 2004 WL 1895201, at *4 (Bankr. D. Idaho Aug. 25, 2004)).

In the instant matter, Defendants flagrantly violated § 504 when they created the multiple fee sharing agreements between themselves and failed to receive this Court's approval of said fee

---

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; [and]

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian[.]

11 U.S.C. § 503(b)(3).

sharing agreements.   The Code and the Fifth Circuit are incredibly clear that splitting fees without this Court's approval is strictly prohibited.  *See In re Anderson*, 936 F.2d at 203 ("§ 504 of the Code . . . flatly prohibits the splitting of fees without prior court approval.").   Evidence presented at trial established that: Defendants intended to split fees as evidenced by the fee sharing agreements made amongst them; Pl.'s Exs. 1, 2; Defendants split fees vis-a-vis distributions made from Grissom's IOLTA; Pl.'s Ex. 21, at 25; and Defendants did not receive this Court's approval to split fees because the fee sharing agreements were never disclosed to this Court.  Additionally, the three elements of a violation of § 504 were established at trial: (1) Grissom was awarded compensation or reimbursement under § 503(b)(2) when the Court approved the application to employ; Bankr. ECF Nos. 72,114; (2) Defendants shared or agreed to share in the awarded compensation or reimbursement when they created fee sharing agreements which ultimately resulted in  transfers from Grissom's IOLTA to Csabi and Rodriguez; Pl.'s Exs. 1, 2, 21, at 25; and (3) the exceptions found in § 504(b) and § 504(c) do not apply to the Defendants as further discussed *infra*.

Generally there are three widely acknowledged exceptions to the prohibition on fee splitting found in § 504 and none apply to the Defendants.  Closer analysis reveals that  allowing fee sharing for partners or associates in the same professional association, partnership, or corporation could potentially be the only exception to the Rule that may apply to the Defendants because the remaining two exceptions most certainly do not apply.[15]   However, evidence produced at trial, including Defendants' testimony, clearly established that Defendants were not "partners or associates in the same professional association, partnership, or corporation."  § 504. Thus, Defendants do not meet any of the widely acknowledged exceptions to the prohibition on

---

[15] Defendants were not "attorneys for petitioning creditors that join in a petition commencing an involuntary case" nor were they "attorney[s] and a bona fide public service attorney referral program."  *In re Smith*, 397 B.R. at 816.

sharing compensation, and therefore, the Court finds that Defendants participated in conduct strictly prohibited by the Code and violated § 504. *See id.*

## E.  Property of the Estate

When a debtor commences a bankruptcy proceeding, an estate is automatically created, which includes both the legal and equitable interests of the debtor.  § 541(a).  Additionally, a Chapter 13 debtor's estate includes any additional property that "the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . ." § 1306(a)(1).  Settlement proceeds, such as the Plaintiff's, are property of the estate.  *Id.*; *In re Bratcher*, No. 08-36225, 2013 WL 5309549, at *3 (Bankr. S.D. Tex. Sept. 19, 2013) (finding settlement proceeds were estate property).  Additionally, and pursuant to this Court's previous orders, *see* Orders, evidence presented at trial, Pl's. Ex. 17, and filings made by Grissom before this Court, Bankr. ECF No. 107, Ex. 1, Plaintiff's portion of the settlement funds was $223,085.10.  Of the $223,085.10, this Court carved out the amount of $90,000 for the payment of Grissom's attorney's fees, leaving the amount of $133,082.10 in settlement proceeds, which were approved based on the representations made to the Court, and the Court ordered turnover to the Chapter 13 trustee of the remaining monies "within 14 days of the entry of this Order." Bankr. ECF No. 114.  Since the settlement proceeds in the amount of $233,085.10 were attained during the pendency of Bankruptcy Case on February 11, 2016, Bankr. ECF No. 92, and the Bankruptcy Case has not been closed, dismissed, or converted, § 1306(a)(1), the settlement proceeds became property of Plaintiff's bankruptcy estate.  *See id*; *In re Bratcher*, 2013 WL 5309549, at *3.

Furthermore, Paragraph 14 of the Plaintiff's confirmed Chapter 13 plan states that "property of the estate shall vest in the debtor(s) upon entry of the discharge order."  Bankr. ECF

No. 54.  "This [Paragraph 14] provision makes it clear that  property of the estate does not vest in the debtor until entry of a discharge.  All property acquired by the debtor, including post confirmation property, is property of the estate until entry of the discharge order."  *In re Bratcher*, WL 5309549, at *4.  No discharge order has been entered in the Bankruptcy case; thus, the settlement proceeds remain estate property.  *See id.*

Finally, in the Agreed Order entered on July 26, 2016, which is now final, "[this] Court reiterate[d] it's finding that such funds [,$133,085.10,] [were] property of the [Plaintiff]'s chapter 13 estate."  Bankr. ECF No. 175.  Thus, for the aforementioned reasons, the Court reiterates that the remainder of the settlement proceeds in the amount of $133,085.10 is property of this Plaintiff's bankruptcy estate.  *See id.*; § 1306(a)(1); *In re Bratcher*, No. 08-36225, 2013 WL 5309549, at *3.

## F.  Violations of the Automatic Stay

After a bankruptcy petition is filed, an automatic stay arises to safeguard the newly created estate.  § 362(a).  "The stay prohibits 'all entities' from making collection efforts against the debtor or the property of the debtor's estate."  *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008).  Specifically, the stay prohibits *any* willful "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  § 362(a)(3).  "Although either 'depleting' or 'dismembering' property of the estate are sufficient to violate the automatic stay under 11 U.S.C. § 362(a)(3), it does not follow that actions so severe are necessary to violate the automatic stay. Rather, the statute's terms 'obtain possession' and 'exercise control' indicate that a wide spectrum of acts are stayed. *In re Montgomery*, 525 B.R. 682, 696 (Bankr. W.D. Tenn. 2015) (citing *In re Allentown Ambassadors, Inc.*, 361 B.R. 422, 437 (Bankr.E.D.Pa.2007) ("The term [exercise control] has

been described as 'elusive' and one which can be defined only in a 'case by case' manner because a 'continuum of conduct exists which the Court must evaluate in determining whether [a party] has assumed control of property of the estate.' ") (citations omitted)); *see also Control*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining Control is as "exercise[ing] power or influence over.").  The Fifth Circuit has determined that the Code:

> provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005).  With regards to what is considered intentional, the Fifth Circuit has stated that the Code "does not require a specific intent to violate the automatic stay, only that the defendant's actions which violated the stay were intentional." *In re Small*, 486 F. App'x 436, 439 (5th Cir. 2012) (citation omitted).  "A violation of the automatic stay in a bankruptcy case . . . can be a serious, unfair, disruptive and, of course, unlawful thing." *In re White-Robinson*, No. 11-32080-SGJ-7, 2011 WL 4807934, at *1 (Bankr. N.D. Tex. Oct. 11, 2011).  Violations of the automatic stay are incredibly serious and this Court will exercise little tolerance for actions that violate the automatic stay.

Determining liability for a violation of the automatic stay requires "finding that the [Defendants] knew of the automatic stay and that the [Defendants'] actions which violated the stay were intentional." *See In re Chesnut*, 422 F.3d at 302.  On October 19, 2015 the $223,085.10 in settlement proceeds were deposited into Grissom's IOLTA; Pl's. Ex. 21, at 1; Grissom testified that he exercised sole control (power or influence) over this account. *See* Min. Entry (8/30/2017).  As early as February 11, 2016, this Court held that Plaintiff's remaining portion of the settlement proceeds were property of the Plaintiff's chapter 13 bankruptcy estate.

*See* Bankr. ECF Nos. 91, 175.   Additionally, and as previously discussed, this Court approved Grissom's attorney's fees in the amount of $90,000 on April 8, 2016, and ordered Grissom to remit the remainder of the settlement proceeds to Cindy Boudloche, Chapter 13 trustee for the benefit of the Plaintiff's Chapter 13 estate.   Bankr. ECF No. 114.   Instead, on April 12, 2016, Grissom caused his bank to issue two separate wire transfers out of *his* IOLTA in the amount of $73,333.00 to Csabi and $73,333.00 to Rodriguez, out of the $223,085.10 in settlement proceeds, based on previously undisclosed fee sharing agreements between the Defendants.   Pl.'s Ex. 21, at 25; Min. Entry (8/30/2017 – 8/31/2017); Pl's. Exs. 1,2.   Thus, this Court finds that Grissom's act of causing the bank to issue the electronic wire transfers of $73,333.00 to Csabi and $73,333.00 to Rodriguez, which resulted in a distribution of estate property without this Court's approval, was not only deliberate, but intentional.   Additionally, Grissom's intentional acts regarding the wire transfers fall within the "wide spectrum of acts [that] are stayed." *In re Montgomery*, 525 B.R. at 696; *see In re Chesnut*, 422 F.3d at 302; *Control*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Similarly, maintaining possession of estate property falls within the "continuum of conduct [that] exists which the Court must evaluate in determining whether [a party] has assumed control of property of the estate." *In re Allentown Ambassadors, Inc.*, 361 B.R. at 437; s*ee* § 362(a)(3); *Control*, BLACK'S LAW DICTIONARY (10th ed. 2014).   Here, the Court finds that from April 12, 2016 through February 13, 2017, Csabi exercised control over estate property by retaining the $73,333.00 distribution he received from Grissom.   *See* Pl.'s Ex. 21, at 25; § 362(a)(3); *In re Allentown Ambassadors, Inc.*, 361 B.R. at 437.   Turning to Rodriguez, the Court finds that from April 12, 2016 through the present, Rodriguez has exercised control over estate property by retaining the $73,333.00 distribution he received from Grissom.   *See* Pl.'s Ex.

21, at 25; § 362(a)(3); *In re Allentown Ambassadors, Inc.*, 361 B.R. at 437.

In addition to exercising control over estate property, Csabi and Rodriguez also disregarded the prohibition "from making collection efforts against the debtor or the property of the debtor's estate." *Campbell*, 545 F.3d at 353; *see also* § 362(a). When Csabi and Rodriguez each accepted and maintained possession of the $73,333.00 distributions from Grissom, each attorney attempted to collect their unauthorized attorney's fees from estate property. *See Campbell*, 545 F.3d at 353. For the reasons stated above, the Court finds that Grissom exercised control over, and intentionally made distributions of, estate property, that Defendants intentionally exercised control over estate property, and that defendants Csabi and Rodriguez intentionally collected unauthorized attorneys' fees from estate property.

Turning now to Defendants knowledge of the Plaintiff's Chapter 13 bankruptcy and the automatic stay, it is undisputed that Grissom was aware that the Plaintiff was in bankruptcy as evidenced by his application for employment; ergo, Grissom was aware of the bankruptcy's automatic stay. *See* Bankr. ECF No. 71. Based on Csabi's and Rodriguez's testimony, it is unlikely that Csabi and Rodriguez did not know of the stay as well, Min. Entry (8/31/2017), especially Csabi because he was Plaintiff's counsel in the Chapter 7 bankruptcy case, 11-10483, which was inextricably intertwined with Plaintiff's Chapter 13 case. Bankr. ECF Nos. 91, 92. However, even if Csabi and Rodriguez did not know at the time of receipt of the monies that the automatic stay was in effect, Limon's letters to each individual on June 10, 2016 clearly alerted the two lawyers of the stay's existence. Pl.'s Exs. 27, 28. Csabi did not relinquish the $73,333.00 in estate property until February 13, 2017; Rodriguez still maintains possession and control of $73,333.00 in estate property. The Court finds that all of the above actions by Defendants demonstrate actual knowledge of the Plaintiff's bankruptcy case and resulting

automatic stay. *See* Bankr. ECF No. 71; Min. Entry (8/31/2017); Pl.'s Exs. 27, 28.

Finally, there is no weight to the arguments that Csabi and Rodriguez made that they believed the $73,333.00 to be their property.  Min. Entry (8/31/2017).  Following the law of the Circuit, "[w]hether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful'" in determining if an action was a violation of the automatic stay. *In re Chesnut*, 422 F.3d at 302.  Here, even if Csabi and Rodriguez believed in good faith that the $73,333.00 each received was actually their property, their belief does not negate the fact that each lawyer acted willfully when they accepted and maintained possession of their respective $73,333.00 transfers. *See id*; Pl.'s Exs. 27, 28, 21, at 25.  Accordingly, this Court finds that Csabi's and Rodriguez's actions were willful violations of the automatic stay because the two lawyers were not only aware of the automatic stay, their actions in exercising control over estate property were intentional. *See In re Chesnut*, 422 F.3d at 302; § 362(a).

## V. CONCLUSION

The case at bar involves flagrant Code, Bankruptcy Rules, and Local Rules violations by three local attorneys and their troublesome practices before this Court.  Defendants willfully failed to meet the disclosure requirements set forth in the Code, the Rules, and the Local Rules. Defendants improperly split fees pursuant to agreements that each individual made with one another, which were secreted from the Court.  Moreover, when Defendants collected their improper fees, they demonstrated nothing less than a flagrant disregard of this Court's previous orders and underestimated the power and weight of the automatic stay, the United States Bankruptcy Code, Bankruptcy Rules, and the Southern District of Texas Bankruptcy Local Rules.

After considering the pleadings, arguments presented by the parties, the evidence, and

relevant case law, this Court finds the following:

1. Grissom violated § 327(e) (employment of special counsel), §329(a) (employment of attorneys), §504(a) (prohibition on fee splitting , §362(a) (violation of the automatic stay), Rule 2014(a) (employment of professional persons requirements), Rule 2016(b) (disclosure of compensation requirements), and BLR 2014-1(a) (employment of special counsel);

2. Csabi violated § 327(e), §329(a), §504(a), §362(a), Rule 2014(a), Rule 2016(b), and BLR 2014-1(d); and

3. Rodriguez violated § 327(e), §329(a), §504(a), §362(a), Rule 2014(a), Rule 2016(b), and BLR 2014-1(d).

Therefore, this court holds Defendants Grissom, Csabi, and Rodriguez liable for violations of the above cited Bankruptcy Statutes, Bankruptcy Rules and Bankruptcy Local Rules.

This Memorandum Opinion should serve as a warning to all that appear before this Court that flagrant and willful violations of the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules will not be endured by this Court.

This Court will issue further orders establishing a separate trial as to the issue of damages.  An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 12/01/2017.

Eduardo V. Rodriguez
United States Bankruptcy Judge